Hagop T. Bedoyan, SBN 131285
M. Joseph Whittington, SBN 295516
KLEIN, DENATALE, GOLDNER,
 COOPER, ROSENLIEB & KIMBALL, LLP
5260 N. Palm Ave., Suite 201
Fresno, CA 93704
Telephone:    559-438-4374
Facsimile:    559-432-1847
Email:        hbedoyan@kleinlaw.com
              jwhittington@kleinlaw.com

Proposed Attorneys for Debtor-in-Possession,
Central Air Conditioning Inc.

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| In re:<br><br>CENTRAL AIR CONDITIONING, INC.<br><br>Debtor-in-Possession. | Case No. 14-11991-A-11<br><br>Chapter 11<br><br>DC No. KDG-1<br><br>Emergency Hearing Date: April 22, 2014<br>Emergency Hearing Time: 1:45 p.m.<br>Final Hearing Date: To be set<br>Final Hearing Time: To be set<br>Place: United States Bankruptcy Court<br>       510 19th Street, Department A<br>       Bakersfield, California<br>Judge: Honorable Fredrick E. Clement |
|---|---|

### DEBTOR-IN-POSSESSION'S MOTION TO USE CASH COLLATERAL AND GRANT ADEQUATE PROTECTION

Central Air Conditioning, Inc., Debtor-in-Possession (the "Debtor" or "CAC"), a construction and air conditioning business, respectfully submits the following motion to use "cash collateral" in the form of cash on hand, money on deposit, refundable deposits, inventory, and accounts receivable more fully described below ("Cash Collateral") and to grant adequate protection to the secured creditor asserting an interest in the Cash Collateral. In support of this motion (the "Motion"), the Debtor represents the following:

///

///

## I. JURISDICTION AND VENUE

1. The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on April 17, 2014. The Debtor operates its business pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M). These matters have been referred to the Court by United States District Court for the Eastern District of California according to General Orders 182 and 223.

3. Venue is properly in this judicial district pursuant to 28 U.S.C. § 1409(a).

## II. LEGAL BASIS FOR MOTION

4. In accordance with 11 U.S.C. § 363(b) & (c), Rules 9014, 4001(b), 2002(a)(2) of the Federal Rules of Bankruptcy Procedure ("FRBP") and Local Rule 9014-1, Debtor seeks an order of the Court authorizing it to use Cash Collateral, and to grant adequate protection to the secured creditor asserting an interest in the Cash Collateral.

## III. BACKGROUND AND EVENTS LEADING UP TO THE BANKRUPTCY CASE

5. Central Air Conditioning was formed as a general partnership in 1978 between Carlos DeOchoa and his brother-in-law, Ramon Carbajal. Within a few years thereafter, Mr. DeOchoa bought out Mr. Carbajal's interest and began operating Central Air Conditioning as a sole-proprietorship. In May of 2003, Mr. DeOchoa and his wife, Berta DeOchoa incorporated the business as Central Air Conditioning, Inc., which continues to this day. Mr. and Mrs. DeOchoa are CAC's sole shareholders and its only two officers.

6. CAC is engaged in the business of installing and servicing residential HVAC systems catering primarily to residential tract homebuilders up and down the San Joaquin Valley. The "Great Recession" of 2008 had a particularly disproportionate impact on the homebuilding industry. Since CAC's business catered primarily to do the homebuilding industry, CAC's business also suffered. Despite the adverse economic conditions CAC's business continued to survive. However, the proliferation of construction defect litigation and the accompanying financial drain associated with insurance deductibles and/or Self-Insured

Retention obligations finally made it impossible for CAC to survive without seeking relief under the Bankruptcy Code. At the present time, CAC is a party to approximately thirty-nine (39) different construction defect lawsuits.

7.  CAC presently employs 53 people, the majority of which are full-time employees. CAC makes payroll on a weekly basis in the approximate gross amount of $35,000.

8.  CAC filed this Chapter 11 case in order to be able to better operate its business and reorganize its financial affairs under the provisions of the Bankruptcy Code.

### IV. NATURE OF CASH COLLATERAL

9.  The "Cash Collateral" in this case consists of cash on hand, money on deposit, refundable deposits, and accounts receivable described as follows:

| | | |
|---|---|---|
| a. | Money on Deposit at Rabobank, N.A. | $     97,202.51 |
| b. | Refundable Deposits | $     25,117.00 |
| c. | Accounts Receivables | $1,052,093.10 |
| d. | Inventory | $     40,000.00 |
| | TOTAL CASH COLLATERAL | $1,214,412.61 |

10. Based upon the loan and security documents, and a UCC search conducted by counsel for the Debtor, the Debtor believes that Carlos DeOchoa has a UCC Security Agreement recorded on November 4, 2013, which secures repayment of $300,000.00 and is secured by all assets listed in Debtor's Schedule B except for vehicles. A true and correct copy of Mr. DeOchoa's notes, security agreement, and recorded UCC Financing Statement is attached as Exhibit "A" to the *Exhibits in Support of the Debtor-in-Possession's Motion to Use Cash Collateral and Grant Adequate Protection* (the "Exhibits"). Mr. De Ochoa is an officer, director, and shareholder of the Debtor. Mr. and Mrs. DeOchoa are also the landlord of CAC pursuant to a lease agreement between the DeOchoas and CAC.

11. The Debtor believes Mr. DeOchoa holds the only secured claim against the Cash Collateral.

///

## V. AMOUNT OF CASH COLLATERAL USE SOUGHT BY DEBTOR

12. Debtor expects to move quickly in proposing a plan of reorganization, but Debtor cannot determine with certainty the timetable for filing a plan of reorganization. In the interim, Debtor seeks the Court's authorization to use Cash Collateral from the petition date through the date of confirmation of the Debtor's Plan of Reorganization. However, to avoid immediate and irreparable harm, pending a final hearing on the Motion, the Debtor requests interim authorization to use cash collateral on a weekly basis as set forth in the budget attached as Exhibit "B" to the Exhibits (the "Budget"). Debtor requests interim authorization to use of between $139,570.00 and $154,310.00 per week from April 21, 2014, pending a final hearing on the Motion as described in the Budget. The Debtor requests interim authorization to use cash collateral on a weekly basis as set forth in the Budget within a 10% variance.

13. Debtor requests continued use of the Cash Collateral of between $143,070.00 and $162,160 per week from May 26, 2014 through August 10, 2014, as provided in Exhibit "C" attached to the Exhibits ("together with Exhibit B collectively "the Budgets"). Further, Debtor requests authority to use the cumulative amounts provided in each category throughout the period reflected in the Budgets, if such amounts were not utilized by CAC in the weeks prior. The Debtor requests interim authorization to use cash collateral on a weekly basis as set forth in the Budgets within a 10% variance.

14. The Debtor has obtained Mr. DeOchoa's consent for the use of cash collateral through August 10, 2014, pursuant to the amounts provided in the Budgets.

15. The Budgets include payment to insiders employed by the Debtor. The insiders are integral to the continued operation of the business conducted by the Debtor as are identified as follows:

    a. Carlos DeOchoa – ($1,960 per week salary and $4,500 per month rent) President, CEO, Shareholder, and Lessor of CAC's building,

    b. Berta (Sylvia) DeOchoa – ($310 per week) Secretary, Treasurer, and Shareholder, and Lessor of CAC's building,

    c. Carlos DeOchoa Jr. ($1,500 per week) – Rough Manager,

      d.  Reuben DeOchoa ($1,500 per week) – Finish Manager,

      e.  Veronica Mora ($1,000 per week) – Office Administrator

      f.  Juan DeOchoa ($15.00 per hour) – On Site Mechanic

      g.  Carlos Xavier DeOchoa ($9.00 per hour) – Installer

      h.  Patrick Mora ($15.50 per hour) - Installer

16. The Debtor will suffer immediate and irreparable harm if it does not obtain the use of Cash Collateral in that (a) Debtor will be unable service its customers on their service agreements, (b) Debtor will be unable to complete its construction contracts, (c) Debtor will be unable to pay its overhead, including but not limited to, insurance, utilities, wages, required to operate its business, and (d) Debtor will be unable to purchase the HVAC equipment needed to meet its construction contracts. Each item on the Budgets was carefully considered and deemed by Debtor's principals to be necessary to Debtor's continued operation.

17. It should be also noted that Debtor's long term cash collateral needs require the Debtor to establish a reserve of cash to fund its operations during the winter months when Central Air Conditioning, Inc. will experience a decrease in sales.

## VI. ADEQUATE PROTECTION OFFERED BY DEBTOR

18. Debtor will provide Mr. DeOchoa with adequate protection, including:

    a.  Granting Mr. DeOchoa a replacement lien on Debtor's post-petition property in the same type and nature as against Debtor's prepetition property to the extent the use of cash collateral results in a decrease in value of Mr. DeOchoa's interest in its collateral,

    b.  Generating replacement collateral in the form of future accounts receivable and profits.

## VII. LEGAL AUTHORITIES

19. Section 541(a)(6) of the Bankruptcy Code specifically enumerates "profits" as property of the estate in a bankruptcy proceeding. Therefore, notwithstanding state law to the contrary, upon the commencement of a bankruptcy proceeding under Title 11 of the United States Code, "profits" are property of the estate and a secured lender can no longer claim

ownership over profits pursuant to an absolute assignment of profits. In re Amaravathi Ltd. Partnership, 416 B.R. 618 (Bankr. S.D. Tex. 2009). This is true because, where a conflict of laws exists; the Bankruptcy Code supersedes state law pursuant to the Supremacy Clause of the United States Constitution. Amaravathi, 416 B.R. at 625; see also, Butner v. United States, 440 U.S. 48, 54 (1979).

20. A debtor is permitted to use cash collateral where the debtor provides a secured creditor with adequate protection of the secured creditor's interest. See 11 U.S.C. § 363(c)(2)(B) and (e); *see also*, In re James Wilson Accoc., 965 F.2d 160, 171 (7th Cir. 1992). This is true because a debtor attempting to rehabilitate has a compelling need to use cash collateral in its effort to reorganize. In re George Ruggieve Chrysler Plymouth, 727 F.2d 1017, 1019 (11th Cir. 1984). Without the availability of cash to meet daily operating expenses, the congressional policy favoring rehabilitation over economic failure would be frustrated. Id.

21. Adequate protection is not defined in the Bankruptcy Code. However, a determination of the value of the interest held by a secured creditor and a determination of whether a proposed use of cash collateral threatens that value must be made in determining whether a secured creditor's interest is adequately protected. In re George Ruggieve Chrysler Plymouth, *supra*, at 1019; In re Karl a Neise, Inc., 16 B.R. 600, 601 (Bankr. S.D. Fla. 1981). Additionally, the value of a security interest for purposes of determining "adequate protection" is the amount of secured claim or the value of the collateral. In re George Ruggieve Chrysler Plymouth, *supra*, at 1019. See also LaJolla Mortg. Fund vs. Rancho El Cajon, Inc., 18 B.R. 283, 286 (Bankr. S.D. Cal. 1982) and 11 U.S.C. Section 506(a).

22. A debtor in possession may use cash collateral to maintain and preserve secured property. In re Pine Lake Village Apartments, Co., 16 B.R. 750 (Bankr. S.D.N.Y. 1982). See also In re Epstein, 7 CBC 1250, 1254-55 (Bankr. E.D. Tenn. 1984).

23. Debtor's proposed use of the Cash Collateral does not threaten the security interests held by Mr. DeOchoa. This is true because the Debtor will continue to maintain and operate the business and will grant a replacement lien on Debtor's post-petition property in the same type and nature as against Debtor's prepetition property to the extent the use of cash

collateral results in a decrease in value of Mr. De Ochoa's interest in its collateral. Furthermore, Mr. DeOchoa consents to the use of the Cash Collateral and has approved the Budgets.

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Debtor prays for an order:

1. Granting the Motion on an interim basis pending a final hearing;
2. Approving the Budgets and authorizing Debtor to use Cash Collateral as provided therein with a 10% variance on an interim basis until a final hearing on the Motion is held;
3. Authorizing Debtor to use Cash Collateral with a 10% variance after a final hearing through August 10, 2014, or further order of the court limiting use of Cash Collateral;
4. Authorizing the Debtor to use the cumulative amounts provided in each category throughout the period reflected in the Budgets, if such amounts were not utilized by CAC in the weeks prior to the dates of authorized payments.
5. Granting adequate protection to Carlos DeOchoa as described above; and
6. For such other and further relief as is just and proper.

Date: April 21, 2014

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP

By: /s/ Hagop T. Bedoyan
HAGOP T. BEDOYAN,
M. JOSEPH WHITTINGTON,
Proposed Attorneys for Debtors-in-Possession