5

Hagop T. Bedoyan, SBN 131285
M. Joseph Whittington, SBN 295516
KLEIN, DENATALE, GOLDNER,
 COOPER, ROSENLIEB & KIMBALL, LLP
5260 N. Palm Ave., Suite 201
Fresno, CA 93704
Telephone:  559-438-4374
Facsimile:   559-432-1847
Email:        hbedoyan@kleinlaw.com
                   jwhittington@kleinlaw.com

Proposed Attorneys for Debtor-in Possession,
Central Air Conditioning Inc.

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>CENTRAL AIR CONDITIONING, INC.<br><br>Debtor-in Possession. | Case No. 14-11991-A-11<br><br>Chapter 11<br><br>DC No. KDG-1<br><br>Emergency Hearing Date: April 22, 2014<br>Emergency Hearing Time: 1:45 p.m.<br>Final Hearing Date:  To be set<br>Final Hearing Time: To be set<br>Place:  United States Bankruptcy Court<br>           510 19th Street, Department A<br>           Bakersfield, California<br>Judge: Honorable Fredrick E. Clement |

### DECLARATION CARLOS DEOCHOA IN SUPPORT OF DEBTOR-IN-POSSESSION'S MOTION TO USE OF CASH COLLATERAL AND GRANT ADEQUATE PROTECTION

I, CARLOS DEOCHOA, hereby declare and represent as follows:

1. I am the president, director, and shareholder of Central Air Conditioning, Inc., Debtor-in-Possession in the above captioned proceeding ("Debtor").

2. Central Air Conditioning Inc. commenced its Chapter 11 case by filing its Voluntary Petition under Chapter 11 of the Code on April 17, 2014.  There is no Chapter 11 Trustee in this case and Debtor is also the Debtor-in-Possession.

///

3.　　Central Air Conditioning was formed as a general partnership in 1978 between my brother-in-law, Ramon Carbajal, and me. Within a few years thereafter, I bought out Mr. Carbajal's interest and began operating Central Air Conditioning as a sole-proprietorship. In May of 2003, my wife, Berta DeOchoa, and I incorporated the business as Central Air Conditioning, Inc. ("CAC"), which continues to this day. My wife and I are CAC's sole shareholders and its only two officers.

4.　　CAC is engaged in the business of installing and servicing residential HVAC systems catering primarily to residential tract homebuilders up and down the San Joaquin Valley. The "Great Recession" of 2008 had a particularly disproportionate impact on the homebuilding industry. Since CAC's business catered primarily to do the homebuilding industry, CAC's business also suffered. Despite the adverse economic conditions CAC's business continued to survive. However, the proliferation of construction defect litigation and the accompanying financial drain associated with insurance deductibles and/or Self-Insured Retention obligations finally made it impossible for CAC to survive without seeking relief under the Bankruptcy Code. At the present time, CAC is a party to approximately thirty-nine (39) different construction defect lawsuits.

5.　　CAC presently employs 53 people, the majority of which are full-time employees. CAC makes payroll on a weekly basis in the approximate gross amount of $35,000. CAC employs my wife and me, and six relatives identified in the Motion. The insiders are long standing employees, and are integral to the continued operation of the business conducted by the Debtor.

6.　　CAC filed this Chapter 11 case in order to be able to better operate its business and reorganize its financial affairs under the provisions of the Bankruptcy Code.

7.　　The "Cash Collateral" in this case consists of cash on hand, money on deposit, refundable deposits, and accounts receivable.

8.　　Debtors estimate that "Cash Collateral" consists of the following:

　　a.　　Money on Deposit at Rabobank, N.A.　　$　97,202.51

　　b.　　Refundable Deposits　　$　25,117.00

| | | | |
|---|---|---|---|
| 1 | c. | Accounts Receivables | $1,052,093.10 |
| 2 | d. | Inventory | $   40,000.00 |
| 3 | | TOTAL CASH COLLATERAL | $1,214,412.61 |

9. I have a UCC Security Agreement recorded on November 4, 2014, for $300,000. which secures repayment of $300,000.00 and is secured by all assets listed in Debtor's Schedule B except for vehicles. A true and correct copy of my Notes, Security Agreement, and UCC Financing Statement is attached as Exhibit "A" to the *Exhibits in Support of the Debtor-in-Possession's Motion to Use Cash Collateral and Grant Adequate Protection* (the "Exhibits").

10. Based upon a search of the records on file with the California Secretary of State's office, Debtor believes that I hold the only secured claim against the Cash Collateral.

11. To avoid immediate and irreparable harm, pending a final hearing on the Motion, the Debtor requests interim authorization to use cash collateral on a weekly basis as set forth in the budget attached as Exhibit "B" to the Exhibits (the "Budget"). The Debtor requests interim authorization to use cash collateral on a weekly basis as set forth in the Budget within a 10% variance. Debtor requests interim authorization to use of between $139,570.00 and $154,310.00 per week from April 17, 2014, through a final hearing on the Motion as described in the Budget.

12. Debtor requests continued use of the Cash Collateral of between $143,070.00 and $162,160 per week from May 26, 2014 through August 10, 2014, as provided in Exhibit "C" attached to the Exhibits ("together with Exhibit B collectively "the Budgets"). Further, Debtor requests authority to use the cumulative amounts provided in each category throughout the period reflected in the Budgets, if such amounts were not utilized by CAC in the weeks prior. The Debtor requests interim authorization to use cash collateral on a weekly basis as set forth in the Budgets within a 10% variance. I consent to the debtor's use of Cash Collateral through the confirmation of the Debtor's Plan of Reorganization.

13. The Budgets include payment to insiders employed by Debtor. As disclosed above, the insiders are integral to the continued operation of the business conducted by Debtor

as are identified as follows:

    a. Carlos DeOchoa – ($1,960 per week salary and $4,500 per month rent) President, CEO, Shareholder, and Lessor of CAC's building,

    b. Berta (Sylvia) DeOchoa – ($310 per week) Secretary, Treasurer, and Shareholder, and Lessor of CAC's building,

    c. Carlos DeOchoa Jr. ($1,500 per week) – Rough Manager,

    d. Reuben DeOchoa ($1,500 per week) – Finish Manager,

    e. Veronica Mora ($1,000 per week) – Office Administrator

    f. Juan DeOchoa ($15.00 per hour) – On Site Mechanic

    g. Carlos Xavier DeOchoa ($9.00 per hour) – Installer

    h. Patrick Mora ($15.50 per hour) - Installer

14. The Debtor will suffer immediate and irreparable harm if it does not obtain the use of Cash Collateral in that (a) Debtor will be unable service its customers on their service agreements, (b) Debtor will be unable to complete its construction contracts, (c) Debtor will be unable to pay its overhead, including but not limited to, insurance, utilities, wages, required to operate its business, and (d) Debtor will be unable to purchase the HVAC equipment needed to meet its construction contracts. Each item on the Budgets was carefully considered and deemed is necessary to Debtor's continued operation.

15. As adequate protection for the use of cash collateral, the Debtor proposes to grant me replacement liens of like kind and extent in the Debtor's accounts and general intangibles in the same order of priority as each had prior to the commencement of the Debtor's case. Debtor will provide me with adequate protection, including:

    a. Granting me a replacement lien on Debtor's post-petition property in the same type and nature as against Debtor's prepetition property to the extent the use of cash collateral results in a decrease in value of my interest in its collateral,

    b. Generating replacement collateral in the form of future accounts receivable and profits.

16. The foregoing statements are within my personal knowledge and I can testify competently thereof if called as a witness.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 21st day of April, 2014 at Tulare, California.

_____
CARLOS DEOCHOA

ORIGINAL