**5**

HAGOP T. BEDOYAN, SBN 131285
M. JOSEPH WHITTINGTON, SBN 295516
KLEIN, DENATALE, GOLDNER,
　　COOPER, ROSENLIEB & KIMBALL, LLP
5260 N. Palm Avenue, Suite 201
Fresno, CA 93704
Telephone:　(559) 438-4374
Facsimile:　(559) 432-1847
Email:　　　hbedoyan@kleinlaw.com
　　　　　　jwhittington@kleinlaw.com

Proposed Attorneys for Debtor-in-Possession,
CENTRAL AIR CONDITIONING, INC.

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>CENTRAL AIR CONDITIONING, INC.<br><br>　　Debtor-in-Possession. | Case No.: 14-11991-A-11<br><br>Chapter  11<br><br>DC No.:  N/A<br><br>Date:　　May 28, 2014<br>Time:　　1:30 p.m.<br>Place:　　United States Bankruptcy Court<br>　　　　　2500 Tulare Street, Fifth Floor<br>　　　　　Department A, Courtroom 11<br>　　　　　Fresno, California<br>Judge:　　Honorable Fredrick E. Clement |

**<u>DEBTOR-IN-POSSESSION'S CHAPTER 11 STATUS CONFERENCE STATEMENT</u>**

　　　　CENTRAL AIR CONDITIONING, INC., the debtor-in-possession in the above-entitled case ("CAC"), hereby provides the following Chapter 11 Status Conference Statement:

**A.　　Background of Debtor and Events Leading Up to Filing Chapter 11**

　　　　1.　　Central Air Conditioning was formed as a general partnership in 1978 between Carlos DeOchoa and his brother-in-law, Ramon Carbajal.  Within a few years thereafter, Mr. DeOchoa bought out Mr. Carbajal's interest and began operating Central Air Conditioning as a sole-proprietorship.  In May of 2003, Mr. DeOchoa and his wife, Berta DeOchoa incorporated the business as Central Air Conditioning, Inc., which continues to this day.  Mr. and Mrs. DeOchoa are CAC's sole shareholders and its only two officers.

/ / /

2. CAC is engaged in the business of installing and servicing residential HVAC systems catering primarily to residential tract homebuilders up and down the San Joaquin Valley. The "Great Recession" of 2008 had a particularly disproportionate impact on the homebuilding industry. Since CAC's business catered primarily to do the homebuilding industry, CAC's business also suffered. Despite the adverse economic conditions CAC's business continued to survive. However, the proliferation of construction defect litigation and the accompanying financial drain associated with insurance deductibles and/or Self-Insured Retention obligations finally made it impossible for CAC to survive without seeking relief under the Bankruptcy Code. At the present time, CAC is a party to approximately thirty-nine (39) different construction defect lawsuits.

3. CAC presently employs 53 people, the majority of which are full-time employees. CAC makes payroll on a weekly basis in the approximate gross amount of $35,000.

4. CAC filed this Chapter 11 case in order to be able to better operate its business and reorganize its financial affairs under the provisions of the Bankruptcy Code.

**B.    Debtor's Present Status**

5. CAC plans to continue operating as an HVAC subcontractor, installing and servicing residential HVAC systems primarily for residential "tract" homebuilders. The reorganization plan CAC intends to file will be an operating plan and will not result in the liquidation of any of the CAC's assets.

6. The filing of the case has helped to stabilize CAC's cash flow because it no longer has to satisfy at the present time large insurance deductibles or self-insured retention deductibles. It will also no longer have to incur legal fees defending "construction defect" litigation in at approximately thirty-nine separate lawsuits. CAC has already begun stipulating to relief from stay in the various construction defect lawsuits whereby the defendant/cross-complainant homebuilders or developers will be permitted to pursue litigation only as to available insurance policies.

///

Case 14-11991    Filed 05/12/14    Doc 45

7. CAC knew that the filing of Chapter 11 could interfere with its ability to continue to buy product from its vendors and the availability of creditor for such purposes from those vendors. CAC's most critical vendor is Goodman Manufacturing, Inc. ("Goodman"), which provides CAC with HVAC equipment for installation in single family homes. As of the commencement of the CAC's chapter 11 case, Goodman was owed $349,000. One or more of CAC's homebuilder clients require that the CAC use HVAC equipment manufactured by Goodman. As of the date of this report, Goodman has resumed shipping product to CAC on a C.O.D. basis.

8. The other major HVAC vendor for CAC is Heating & Cooling Supply, Inc. That vendor continues to provide product to CAC on ordinary credit terms.

**C.    Other Matters Pursuant to Court Order Setting Status Conference**

9. **Administrative Solvency of the Estate, Professional Fees and 503(b)(9).** CAC's first Monthly Operating Report will be filed in the next few days, but based upon cash-flow projections accompanying its motion for cash collateral use and the busy summer months ahead, CAC believes the estate will be administratively solvent for the foreseeable future. With respect to professional fees, all professionals received retainers prior to the commencement of the CAC case and will not require the payment of additional fees for the next 60 days. Finally, CAC has identified eighteen (18) creditors asserting priority claims under 11 U.S.C. Section 503(b)(9) totaling $175,719. On May 5, 2014, CAC obtained court approval to fix, allow and pay the 503(b)(9) claims starting this week on a pro-rata basis at the rate of $3,500/week (KDG-2).

10. **Motions for Relief from Automatic Stay/Motions to Dismiss or Convert.** CAC has begun stipulating to relief from stay to allow homebuilders/developer cross-complainants to pursue litigation only as to available insurance policies.

11. **Motions under 11 U.S.C. Sections 365(d) (3) and (4).** None have been filed to date. However, CAC leases its business premises, located at 1648-B West Tulare Avenue, Tulare, California, from the Carlos and Berta S. DeOchoa 2003 Trust. Carlos and Berta DeOchoa are CAC's only two shareholders. This lease (the "Lease") consists of 2000 square

3D26109.DOCX                              3                    DEBTOR –IN-POSSESSION'S CHAPTER 11
                                                                                                        STATUS CONFERENCE STATEMENT

feet of office space and 27,000 square feet of shop and storage area with contiguous parking. The initial term of the Lease commenced on January 1, 2014, and will continue until December 31, 2014, but will automatically renew for one year terms, unless written notice of termination is given by October 15th of any given year. The rent for the Lease is $4,500/month and CAC is current at this time. CAC intends to assume the Lease within the initial 120 day statutory period.

12. **Use of Cash Collateral.** CAC's only "cash collateral" creditor is its principal, Carlos DeOchoa. On April 24, 2014, the court made his order approving interim cash collateral use and granting adequate protection (Doc. No. 20). A final hearing on CAC's request for cash collateral hearing is scheduled for May 14, 2014 at 1:30 p.m. Other than a replacement lien of like kind and extent, Mr. DeOchoa has not requested adequate protection payments at this time.

13. **Employment of Professionals.** The CAC has employed the Klein, DeNatale, Goldner law firm as its general bankruptcy counsel. An application seeking approval of the Klein, DeNatale, Goldner firm was filed with the Court on May 1, 2014 (Doc. No. 31). As of this date, no order has been entered approving that application. CAC has also employed the accounting firm of Gilman, Harris & Travioli (Dawn R. Lee) to act as the accountants for its chapter 11 estate. An application to approve the accountant's employment application was filed on May 9, 2014 (Doc. No. 40). As of this date, no order has been entered approving the accountant's employment application. Finally, CAC has also retained as special counsel, Ward R. Stringham out of Tulare, California, for purposes of handling the plethora of construction defect litigation matters pending in various state courts around the state, and for purposes of providing counsel to CAC and the Klein, DeNatale, Goldner firm on matters pertaining to construction defect litigation. An application to employ Ward R. Stringham under 11 U.S.C. Section 327(e) will be filed before May 16, 2014.

14. **Debtor's Intent with Respect to Plan of Reorganization.** CAC intends to file an operating reorganization plan within the next four to six months, once it knows the results of its busy summer construction season; it does not intend to liquidate any of its assets.

///

15. **Administrative Matters.** CAC has closed all prepetition bank accounts and has opened two new debtor-in-possession accounts at RaboBank, N.A. All necessary insurance policies are currently in place. CAC's Meeting of Creditors is scheduled for May 20, 2014 at 10:30 a.m. The Initial Debtor Interview is scheduled for May 15, 2014 at 10:30 a.m. CAC anticipates filing amended schedules to correct information previously disclosed in the initial schedules.

Dated: May _12_, 2014

KLEIN, DENATALE, GOLDNER
COOPER, ROSENLIEB & KIMBALL, LLP

By: _/s/ Hagop T. Bedoyan_
HAGOP T. BEDOYAN, ESQ.
M. JOSEPH WHITTINGTON, ESQ.
Proposed Attorneys for
Debtor-in-Possession